U.S. DISTRICT COURT
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___/___/8/13____
     6B

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

LOUISIANA CRAWFISH PRODUCERS            CIVIL ACTION NO.: 10-0348
ASSOCIATION - WEST, ET AL.

VERSUS                                  JUDGE DOHERTY

AMERADA HESS CORPORATION, ET AL.        MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before this Court is the Report and Recommendation of the magistrate judge [Rec.

Doc. 379], on blanket motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)

by HESS CORPORATION F/K/A AMERADA HESS CORPORATION, CONOCO PHILLIPS CO.,

SOUTHERN NATURAL GAS COMPANY, EXXON MOBIL CORPORATION, EL PASO FIELD

SERVICES MANAGEMENT INC.,[1] ENTERPRISE PRODUCTS COMPANY, UNION OIL OF

CALIFORNIA, FLORIDA GAS TRANSMISSION CO., LLC,[2] THE DOW CHEMICAL

COMPANY, TEXACO PIPELINES, LLC, ANADARKO PETROLEUM CORPORATION, HUNT

OIL CO., DENBURY MANAGEMENT, INC., HILCORP ENERGY CO., THE LOUISIANA

LAND & EXPLORATION CO., KERR-MCGEE FEDERAL LIMITED PARTNERSHIP I-1981,

CONCHA CHEMICAL PIPELINE, LLC, ENTERPRISE LOU-TEX PROPYLENE PIPELINE

COMPANY, BRIDGELINE HOLDINGS, L.P., SHELL PIPELINE COMPANY LP, SORRENTO

PIPELINE COMPANY, WILLBROS CONSTRUCTION (U.S.) LLC,[3] DENBURY RESOURCES,

---

[1] El Paso CGP, LLC is successor by merger.

[2] Sometimes referred to as Florida Gas Transmission Co. in the pleadings.

[3] F/K/A Willbros RPI, Inc.

INC., DENBURY ENERGY SERVICES, INC., DOW INTRASTATE GAS COMPANY, CAMPBELL ENERGY CORPORATION, GULF PRODUCTION COMPANY INC., PANO-TECH EXPLORATION CORP. A/K/A CAPRICORN PIPELINE CO., ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED, ZURICH AMERICAN INSURANCE COMPANY, AMERICAN INSURANCE GROUP ("AIG"), AMERICAN EQUITY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, AMERICAS INSURANCE COMPANY, TIG SPECIALTY INSURANCE COMPANY, ST. PAUL SURPLUS LINES INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, LLOYDS UNDERWRITERS, and  LLOYDS AND COMPANIES AND/OR LLOYDS OF LONDON ("Defendants"). [Rec. Docs. 328-333, 340] The magistrate judge's report found that maritime torts were sufficiently pled in the complaint as to certain of the defendants, but not as to others, and, therefore, recommended the dismissal only of certain defendants and their insurers. [Rec. Doc. 379] Defendants have filed both joint and individual objections to the magistrate judge's report and recommendation. [Rec. Docs. 386, 394-398] The plaintiffs, also, have filed objections to the report and recommendation. [Rec. Doc. 405] Both plaintiffs and Defendants have filed responses to the objections. [Rec. Docs. 407-415]

**I. Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made

by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."

## II. Procedural Posture

This case has a lengthy procedural history and has been ongoing for six (6) years primarily in state court and is now before this Court by way of removal.  The procedural posture relevant to the instant matter is as follows. On September 15, 2010, insurer defendants filed a "Motion and Order Pertaining to First Group of Dispositive Motions to be Heard by the Court." [Rec. Doc. 226] The motion requested   an order be issued governing the management and scheduling of the first group of dispositive motions. [Rec. Doc. 226-2] Thereafter, on September 16, 2010, the magistrate granted the motion and issued an order, which made dispositive motions filed by either corporate or insurer defendants globally applicable to all like defendants, unless a defendant expressly exercised their opt-out right.[4] [Rec. Doc. 227]

Beginning on July 30, 2010, the Defendants filed multiple motions for summary judgment, on the basis maritime law does not provide a remedy to the plaintiffs under "group or enterprise" liability. [Rec. Doc. 162] The magistrate judge granted the motions for summary judgment to the extent that plaintiffs cannot prevail under a "group or enterprise" theory. [Rec. Doc. 263, p.18] In the magistrate's report and recommendation on the motions for summary judgment, the magistrate,

---

[4] Pursuant to an order negotiated by the parties the order governs, "[b]oth with regard to the first group of dispositive motions and any subsequent dispositive motions, and subject to the right to opt out as set forth herein, all Corporate Defendants shall be deemed to have adopted any generally applicable dispositive motion filed by any other Corporate Defendant, and all Insurer Defendants shall be deemed to have adopted any generally applicable dispositive motion filed by any other Insurer Defendant.  Any Corporate Defendant or Insurer Defendant may file notice of its intention not to adopt a particular motion, and nothing herein shall preclude any defendant from filing any such additional motions, memoranda, or arguments as may be desired or appropriate." [Rec. Doc. 226-2, p. 2]

also, agreed plaintiffs be allowed to amend their pleadings "pursuant to Fed. Rule Civ. P. 56(e)." [Rec. Doc. 263, p. 18] This Court ultimately adopted the magistrate's report and recommendation, which *inter alia*, allowed the plaintiffs to amend their pleadings. [Rec. Doc. 269] Plaintiffs filed a Fifth Supplemental and Amended Complaint on May 16, 2011. [Rec. Doc. 280] Thereafter, Defendants collectively filed multiple motions to dismiss pursuant to Rule 12(b)(6) which, also, are subject to the magistrate judge's order establishing an "opt out" requirement. [Rec. Docs. 328-333, 340] The magistrate judge, thereafter, heard lengthy oral arguments from the parties on October 25, 2011 on the filed motions. [Rec. Doc. 406] In preparation for his report and recommendation, the magistrate judge issued an order separating the actions, which had been cumulated in state court prior to removal, into individual civil actions by way of the plaintiffs involved. [Rec. Doc. 366] The magistrate judge's report and recommendation, on the multiple Rule 12(b)(6) motions, was filed on August 8, 2012; [Rec. Doc. 379] both plaintiffs and defendants filed numerous objections [Rec. Docs. 386, 394-398, 405] and responses [Rec. Docs. 407-414, 415], which this Court shall now address.

**III. Applicable Law**

When applying the proper standard of inquiry under a Rule 12(b)(6) motion to dismiss, the inquiry is properly limited to the pleadings, with only very limited exception. Where the motion is filed pursuant to Rule 12(b)(1), however, the inquiry can be broader, in certain instances, allowing a Court to consider evidence beyond the four corners of the complaint. As noted by the magistrate judge, the instant motion is a Rule 12(b)(6) motion and *not* a Rule 12(b)(1) motion, and, therefore, does not call for or allow the broader inquiry. The crux of the Rule 12(b)(6) inquiry before this

Court is whether a *maritime* tort was sufficiently pled under Rule 12(b)(6) and the *Twombly*[5] and *Iqbal*[6] standards which jurisprudentially refine the Rule 12(b)(6) inquiry. Consequently, this Court *need not make any factual determinations on the merits of the elements of a maritime tort under the applicable 12(b)(6) inquiry, rather need only look to the facts, as plead, taken as true and evaluate the sufficiency of those facts under the standards set forth under Iqbal and Twombly.* However, as noted by the magistrate judge, the inquiry as to the existence of a maritime *tort* - necessary under the Rule 12(b)(6) analysis - has, to some extent, within the jurisprudence, blended with the analysis of the existence of maritime *jurisdiction* - although a separate *legal* inquiry. Although the inquiries are separate, jurisprudentially, they have become associated, factually. However, the *breadth and depth* of the inquiry is determined, in large part, by the selected procedural vehicle. Additionally, the legal results of the two inquiries have not been held to be, at all times and for all purposes, synonymous. The jurisprudence, following the Supreme Court's decision in *Grubart*,[7] however, arguably has blurred the line between a maritime jurisdictional inquiry and a maritime tort inquiry by relying on the *same elements* for the two inquiries, but has not, necessarily, conflated the differing legal consequence of the findings or addressed the possible differing *procedural* vehicles and standards which might be at play. It is well accepted with a 12(b)(6) inquiry, one is, with limited exception, confined to the pleadings, whereas with a jurisdictional inquiry – often couched under 12(b)(1) – the Court can engage in limited fact finding and those substantive determinations necessary to determine the threshold question of jurisdiction. Thus, awareness of and a disciplined conducting of the appropriate *procedural* analysis can be pivotal in any given motion. The *procedural vehicle* selected

---

[5]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

[7]*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* 513 U.S. 527, 115 S.Ct. 1043 (1995)

often defines the nuance and breadth of the inquiry to be undertaken. Here, defendants have specifically chosen the procedural vehicle of Rule 12(b)(6) and neither party suggests nor argues the broader inquiry of a 12(b)(1) motion addressing jurisdiction - maritime or otherwise - at this juncture.

The claims remaining to the plaintiffs, at this stage in the litigation, are only those couched under *maritime law*, as all state law claims have been dismissed. Thus, *the sufficiency of the facts* pled to support the alleged *maritime* tort frames the contextual basis of the immediate inquiry, rather than *the probability of the claims* or an inquiry into the probable existence of maritime *jurisdiction*. Thus, the *procedural vehicle* selected, i.e. Rule 12(b)(6) *limits the depth of the inquiry to the sufficiency of the pleadings* on their face, when judged under the *Iqbal* and *Twombly* standards as illuminated by *Grubart* and does not invite or allow determination of the actual underlying substantive questions suggested by the broader jurisdictional inquiry of *Grubart*. Thus, unlike a jurisdictional inquiry, often couched under 12(b)(1), which allows for certain fact finding, and substantive determination, the 12(b)(6) inquiry does not so allow, with very limited, and, here, nonapplicable, exception. Consequently, the inquiry before this Court is limited to the face of the pleadings and the sufficiency of the facts pled when viewed through the prism of Rule 12(b)(6) as clarified by *Iqbal* and *Twombly* and illuminated by *Grubart*.[8]

### The Rule 12(b)(6) Standard

When reviewing a motion to dismiss, this Court's "analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) *cert. denied*, 133 S.Ct. 32, 183 L.Ed. 2d 678 (U.S. 2012) (citing *Fin.*

---

[8]Maritime jurisdiction is not challenged by either party at this juncture and this Court makes no determination on that legal question within this ruling.

*Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)).  The Court reviews the motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff.*" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted)(emphasis added).  However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(emphasis added).  "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face.*' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)(emphasis added).  Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts.  The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "**The plausibility standard is not akin to a 'probability requirement**,' but **it asks for *more than a sheer possibility*** that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)(emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "*nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)(emphasis added).  Again, the jurisprudence instructs that

-7-

determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

### Maritime Law Claims

Again, it should be noted the claims at issue are alleged to be *maritime* torts; no other claims remain before the Court. Consequently, the parties, as well as the magistrate judge, looked to the U.S. Supreme Court case of *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* 513 U.S. 527, 115 S.Ct. 1043 (1995) for guidance in determining whether the pleadings are sufficient to have pled a *maritime* tort when reviewed under the *Iqbal* and *Twombly* tests, as couched under Red. R. Civ. P. 12(b)(6). It should be noted at the outset, *Grubart* was an inquiry into *maritime jurisdiction - not* the Rule 12(b)(6) inquiry now before this Court. However, the Court in *Grubart*, in dicta, inferred the necessary factual elements of a maritime jurisdiction inquiry and of a maritime tort inquiry are inextricably intertwined.

> ... exercise of federal admiralty jurisdiction does not result in automatic displacement of state law. It is true, that, "with admiralty jurisdiction comes the application of substantive admiralty law."[9]

It is, of course, settled law that admiralty law defines the existence of a maritime tort and for one to have a *maritime* tort, one must sound in admiralty, which would, also, likely grant jurisdiction under "the admiralty." Thus, substantively the two inquiries are, as *Grubart* suggests, more often than not, inextricably intertwined. However, *Grubart* does not, also, suggest a merging of *procedural vehicles*. Nonetheless, even within the more generous 12(b)(6) analysis, as the magistrate judge recognized, one must look to the law of the admiralty to determine if the *tort* pled can, in fact, sound

---

[9]*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546, 115 S.Ct. 1043 (1995), (citing *East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 2298-2299, 90 L.Ed.2d 865 (1986))

in *maritime* law under the *Twombly* and *Iqbal* standards; however, under a 12(b)(6) analysis, to survive, plaintiff *need not prove the tort*, in fact, sounds in maritime law, or even that it is meets the "probability requirement," rather, *plaintiff need only prove the facts pled "nudge [his or her] claims across the line from conceivable to plausible ....." Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)(emphasis added) and *Iqbal*.   *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)(emphasis added).   Consequently, the parties and magistrate judge's reliance upon *Grubart* and its progeny is not misplaced, however, neither is *Grubart* defining within the procedural analysis at play.   Consequently, this Court will address the *Grubart* standard, but does so mindful of the differing legal contexts, procedural vehicles, and standards involved; distinctions, which within the context at hand, are paramount and not without significant legal consequence.

First, this Court reminds, one must not lose sight of the fact this Court is **not** engaged in an examination of the actual or even probable existence, or lack thereof, of a maritime tort, or of the existence or lack thereof, of maritime jurisdiction - rather, the inquiry is that mandated by Rule 12(b)(6) as informed by *Iqbal* and *Twombly*, i.e. one which looks for "more than a sheer possibility" but less than "a probability requirement."   Here, defendants have surgically defined the inquiry by their selection of procedural vehicle, i.e. Fed. R. Civ. P. 12(b)(6), and neither party challenges nor raises question of jurisdiction at this time.   The question at hand, therefore, is not whether maritime jurisdiction exists, or *the probability* of the existence of a maritime tort, rather, the inquiry is one of *sufficiency of pleading* under *Iqbal* and *Twombly* of the maritime torts alleged.   With these defining distinctions in mind, this Court will look to whether the facts, as pled in plaintiff's pleadings, are sufficient to have pled the maritime torts argued under the 12(b)(6) standard - as defined by *Iqbal*

and *Twombly.*

The Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, discussed the test for determining the existence of a maritime tort, within the context *of a maritime jurisdiction inquiry.* The Supreme Court instructed specifically, a tort *can be brought in admiralty* where it satisfies "conditions of both location and of connection with maritime activity."[10] The Supreme Court instructed, "[a] court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Additionally, the Court instructed courts must, also, look to the connection to maritime activity, a test which the Court in *Grubart* separated into sub parts:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.* Second, a court must determine whether *the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.*

*In re Katrina Canal Breaches Litig.,* 324 F. App'x 370, 376 (5th Cir. 2009) (emphasis original)(quoting *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043). Jurisprudentially, this discussion by the Court is often referenced, both, when analyzing whether there exists a maritime claim, and when analyzing whether maritime jurisdiction exists. The two inquiries are more often than not *factually* indistinguishable, but as noted, not always presented by the same *procedural vehicles.* Nonetheless, *Grubart*'s progeny often is argued for the proposition that the two analyses having been conflated for all purposes. However, the two inquiries, **procedurally** are *not* necessarily the same, nor, is the legal consequence of one always the legal consequence for the other. It is of critical importance to maintain the distinction between the two analyses with an eye to the *procedural vehicle selected* and,

---

[10] *Id.* at 534. Again, one must not lose sight of the fact all claims, tort or otherwise, pled under state law have been dismissed.

the legal consequence involved.  The differing procedural postures of the two inquiries - when couched as a 12(b)(6) or a 12(b)(1) inquiry – is determinative in this instance.  As noted by the magistrate judge, the inquiry in this instance is one couched under Rule 12(b)(6) and *not* Rule 12(b)(1).  Under a 12(b)(6) inquiry, the Court's inquiry is limited to the face of the pleadings, and the Court must accept the facts pled as true, with the inquiry directed to the *sufficiency* of those facts pled; with a 12(b)(1) challenge, often the procedural vehicle selected for a jurisdictional challenge, the inquiry is, by necessity and definition, broader and courts can and should make certain necessary factual and substantive findings.  Therefore, with a 12(b)(1) jurisdictional inquiry, the Court is not so limited as with a 12(b)(6) inquiry.  Again, under a jurisdictional analysis, this Court could, and should where appropriate, look to evidence beyond the pleadings, and make certain factual findings and substantive determinations, however, under a 12(b)(6) the Court should not do so.  The specific procedural vehicle defendants very deliberately selected in the instant matter is a *Rule 12(b)(6) motion to dismiss*, which by definition limits the inquiry to the pleadings and any attachments thereto with only limited exception.  Therefore, the inquiry before this Court, upon this motion, is whether a *maritime* tort *was sufficiently pled* under the 12(b)(6) standard as informed by *Iqbal* and *Twombly,* and *not* whether a maritime tort actually exists or meets a "probability" standard, or whether maritime jurisdiction *actually* exists as informed by *Grubart* - although, *Grubart* informs the inquiry.

## IV.  Factual Background

The magistrate judge has extensively described the undisputed factual background in his report and recommendation and this Court will not repeat that recitation at this point, rather incorporates those undisputed facts into this Ruling by reference. [Doc. No. 379 pp.2-8]

The parties suggest in their objections that the magistrate judge, also, made certain factual

findings and substantive determinations in his report and recommendation to which they object. To the extent one could interpret the magistrate judge's report and recommendation in that manner, this Court would specifically decline to adopt, at this particular juncture, any factual findings or substantive determinations which are not necessary to a ruling pursuant to 12(b)(6). Again, one should not lose sight of the procedural vehicle at hand, and the limited scope of the relevant inquiry pursuant to that procedural vehicle. The inquiry does not require factual findings outside of the pleadings or determinations of "probability" under a 12 (b)(6) analysis, and to the extent any such factual findings or substantive determinations can be argued to have been made by the magistrate judge - this Court would decline to adopt those findings - at this juncture. Again, under a 12(b)(6) inquiry, factual findings and determinations of "probabilities" are not required or proper. It should be noted this Court is in no way speaking to the correctness or lack thereof of any possible findings of fact, or possible legal conclusions argued to have been made by the magistrate judge, rather, this Court merely declines to adopt any such findings or legal conclusions, at this juncture, as they are not essential to the limited scope of inquiry presented by the 12(b)(6) inquiry.

## V. Analysis

It is undisputed the remaining claims of plaintiffs are those alleged as *maritime* torts as all state law claims have been dismissed and no other basis for the remaining claims is argued by any of the parties. Therefore, under the 12(b)(6) analysis, this Court must look to the four corners of the complaint, and any proper attachments thereto, to determine whether plaintiffs' sufficiently stated a claim for which relief can be granted - here specifically, as a *maritime* tort. This Court must, therefore, *take all factual allegations made in the pleadings, accept them as true, and then determine whether those factual allegations are sufficient to "nudge" the claims "across the line from*

-12-

*conceivable to plausible...*" as a *maritime* tort.[11]  As the remaining claims are only those alleged to be maritime in nature, the inquiry must look to the elements necessary for a tort to be maritime in nature.  It is, however, important to remember this Court is looking <u>not</u> to whether a maritime tort actually exists or the facts meet a "probability" standard, rather, this court must look <u>only</u> to whether the facts pled are sufficient to "nudge" the claims from "conceivable to plausible."  Thus, this Court will not, and should not, undertake a more expanded Rule 12(b)(1) analysis at this juncture as that is not the relevant procedural inquiry.  Thus, this Court will look only so far as the *sufficiency of the pleadings* and any proper attachments, judged against *Iqbal, Twombly* and their progeny, as mandated by the Rule 12(b)(6) motion as enlightened by *Grubart*.

It is paramount that at the outset it be noted, *this Court agrees with the **outcomes** of the magistrate judge and adopts those outcomes*. [Rec. Doc. 379, pp. 34, 35]  However, to the extent the parties infer and argue the magistrate judge might have made factual findings and substantive determinations not mandated by a 12(b)(6) inquiry - this Court would decline, at this juncture, to adopt any such argued factual and substantive determinations, as they are not necessary to the resolution of the actual motion before the Court.  Consequently, this Court modifies the magistrate's report and recommendation to the extent noted and as detailed below.

### A.  Objections

#### 1. Dredging

a.  Defendants lodge several objections surrounding the magistrate judge's treatment of the analysis surrounding the dredging activities alleged by the plaintiffs in certain pleadings.

---

[11]*Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 127 S. Ct. 1955, 1965).

      b.  Plaintiffs also object to the magistrate judge's treatment of the analysis surrounding alleged "dredging" activities:

> [t]o the determination that the allegation of dredging in navigable waters in the Fifth Amended Complaint satisfied the "locus test" for a maritime tort. (Rec. Doc. 379, pp.23-26).  This is a conclusory allegation that, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), cannot be accepted. It is also inconsistent with the Court's finding that plaintiffs' factual allegations consist of dredging to create new canals where none existed and that the cause of plaintiffs' alleged damages is the creation of spoil banks on land. ...

> The Report and Recommendation finds that Plaintiffs have pled "two different types of dredging activity: dredging navigation access canals to sites of wells and dredging pipeline canals during pipeline construction." (Rec. Doc. 379, pp. 23-29). Defendants object to the determination that these types of dredging (or any other dredging alleged by plaintiffs) satisfy the "locality" and "connexity" tests required for maritime tort. ...

> Defendants object to the determination that the "general nature of their activity" is "the dredging of canals through navigable waters of the Atchafalaya Basin." (Rec. Doc. 379, p. 29). ...

> [Rec. Doc. 395, pp. 2-3]

      c.  Florida Gas, specifically, objects to the Report for the following reasons:

II.    The general character of the activity of Florida Gas does not show a substantial relationship to traditional maritime activity.

[Rec. Doc. 394, p. 1]

Defendants' objections, when viewed collectively, address more an interpretation suggested and *the argued breadth* of the magistrate judge's ruling than, perhaps, its outcome.  Again, one must not lose sight of the nature of the inquiry presented and declared by the magistrate judge as his procedural context; i.e. whether *under a 12(b)(6) analysis* plaintiffs' allegations made within their pleadings – if accepted as true, are sufficient to meet the *Iqbal* and *Twombly* standards. Consequently, the relevant inquiry is not whether a maritime tort has been pled to a "probability"

standard, but whether the pleadings are sufficient to "nudge" the claims made across the line from merely "conceivable to plausible." Thus, specifically, the inquiry is not whether dredging actually meets the "locus test of admiralty," rather, the inquiry is whether, as pled, *it is plausible dredging could meet* that test once discovery is complete and all facts are known. Consequently, one need not determine or delve into the substantive inquiry as to the actual nature of dredging in all instances, rather, what is relevant is whether, under *Twombly* and *Iqbal*, it is "plausible" the activity alleged, here, dredging, could be of a nature to support the maritime tort pled. Similarly, neither must this Court, at this juncture, determine whether all of the Atchafalaya Basin is navigable; rather, again, the question is whether, under *Twombly* and *Iqbal*, it is "plausible" the areas pled could be navigable. Therefore, this Court looks to the facts pled to determine, only, whether they are sufficient under the much more forgiving level of inquiry of *Iqbal* and *Twombly*. Consequently, the relevant, and limited, inquiry under the 12(b)(6) motion, is whether plaintiffs have pled sufficient facts within their pleadings to meet the *Iqbal* and *Twombly* standards, i.e., are the allegations as pled "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the test is whether the allegations, taken as true and in the light most favorable to the plaintiff, "nudge" [the] "claims across the line from conceivable to plausible..." as a *maritime* tort.[12] With this more forgiving Rule 12(b)(6) procedural context in mind, an actual substantive finding of a maritime tort is not required, nor, in fact, is it appropriate. That having been said, the Court notes that it agrees, to the extent the magistrate judge's report and recommendation could be argued as having made factual or substantive determinations not required by Rule 12(b)(6), those findings and substantive determinations should not govern and this Court would decline to adopt any such factual findings

---

[12]*Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 127 S. Ct. 1955, 1965).

and substantive determinations.  However, this Court reminds the magistrate judge clarified his procedural context as that of 12(b)(6).  This Court, also, agrees with the magistrate judge's *outcomes* and findings made pursuant to the declared Rule 12(b)(6) inquiry conducted and adopts those *outcomes* as to those plaintiffs identified by the magistrate judge as having met the Rule 12(b)(6) standard, and as to those the magistrate judge found had not.

For example, this Court notes when examining the pleadings, certain plaintiffs identified by the magistrate judge have alleged,

171.

> On or about Jan 15, 1964, Defendant AMERADA HESS, and/or its agents, employees and contractors conducted operations *in the Buffalo Cove Area* consisting of *dredging* a *navigation* access canal to the site of AMERADA's petrochemical well, Amerada Petroleum Corp Case Kurzwig No. 10. In connection with same, Defendant AMERADA HESS, its agents employees and contractors caused to be deposited *within the Buffalo Cove Area* dredge spoil which created an impediment to *commercial navigation and water flows* within the fishing area then known as Lake Chicot. Upon information and belief, the dredge spoil associated with this access canal remains to this day, *an impediment to commercial navigation and water flows* within the fishing area now known as Lake Chicot and/or "Amerada" in violation of federal, state, and local laws, as well as in violation of the U.S. Army Corps of Engineers permit issued for said canal.

(emphasis added.) [Rec. Doc. 280, p. 33] Again, the torts pled must be maritime in nature; *Grubart* enlightens as to the elements necessary for a tort to sound in admiralty.  Thus, the magistrate judge noted certain plaintiffs have pled certain acts, i.e. dredging, occurred in/on areas alleged to be navigable which interfered with commercial navigation and water flow of those navigable waters. Thus, those plaintiffs have pled facts, which must be taken as true for these purposes, sufficient to "nudge" the allegations *into the realm of a maritime tort as discussed by Grubart, **when judged under the more forgiving 12(b)(6) standard as defined by Iqbal and Twombly***.  The magistrate judge found, and this Court agrees, those allegations noted were sufficiently pled to "nudge" those

-16-

claims "across the line from conceivable to plausible," as *maritime* torts, *given the necessary elements for maritime torts as illuminated by Grubart.* As noted, the allegations in the pleadings allege activity, i.e. dredging, which interfered with commercial navigation in an area alleged to be navigable, found in a body of water, and alleges the dredging of a navigation canal in an area alleged to be navigable.[13] Again, whether the facts, after full discovery has been had, will, in fact, support a finding of navigability at each relevant location or a finding the involved activity, i.e. dredging was, in fact, under any given factual scenario maritime in nature, are inquiries perhaps, for another day and are not the inquires before this Court, under the limited Rule 12(b)(6) analysis. Rather, again, under the Rule 12(b)(6) inquiry this Court finds only that plaintiffs have pled sufficient facts to "*raise a right to relief above the speculative level*"[14] or as suggested by *Mitchell*[15], when taking the facts as pled by plaintiffs as true and viewed in the light most favorable to the plaintiffs, the allegations "nudge" the claims "across the line from conceivable to plausible." This Court, thus, agrees with the magistrate judge's findings, as to those pleadings found to have met the 12(b)(6)

---

[13]Certain portions of the Atchafalaya Basin have been found to be navigable, under certain factual scenarios, at certain points in time. Consequently, one cannot argue that, *as a matter of* law the areas pled by plaintiff cannot be found as navigable. *Meche v. Richard*, No. 05-0385, 2007 U.S. Dist. LEXIS 17898 (W.D. La. Feb. 26, 2007) - finding that specific area of the Atchafalaya Basin at issue, was in that instance and at that time navigable for purposes of an alleged maritime tort. Similarly, certain circuits, albeit not the Fifth Circuit, have found under certain factual scenarios dredging can be found to be maritime in nature. Consequently, similarly, one cannot argue that, as a matter of law, dredging can never be found to be maritime in nature. Although this Court, admittedly, has not conducted exhaustive research of the case law, it notes the Eleventh Circuit, in a action *arising out of a maritime contract* concluded that "the Supreme Court has previously held that dredging is a traditional maritime activity." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (citing *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 495-97, 125 S.Ct. 1118, 1127-29, 160 L.ed.2d 932 (2005); *Ellis v. United States*, 206 U.S. 246, 259, 27 S. Ct. 600, 603, 51 L.Ed. 1047 (1907) (internal citations ommited) (dredges are vessels and fall "within the admiralty jurisdiction of the United States)). Further highlighting that the fact based nature of the inquiry is the Fifth Circuit case *In re Katrina Canal Breaches Litig.*, 324 Fed. App'x 379 (5th Cir. 2009) where the court concluded that dredging of drainage canals did not satisfy the "connection-to-maritime" aspect of the *Grubart* test.

[14]*Twombly*, 550 U.S. at 555 (emphasis added).

[15]*Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 127 S. Ct. 1955, 1965)

standard, and those found not to have met the 12(b)(6) standard for the reasons noted herein and within the magistrate judge's report and recommendation within his 12(b)(6) analysis.

Although it is inferred by the objections that the magistrate judge's 12(b)(6) analysis went beyond that required for the Rule 12(b)(6) inquiry, the issue might be more one of language and semantics rather than genuine substance, as the magistrate judge was careful to note the question he addressed was limited to a 12(b)(6) inquiry and not the broader 12(b)(1) inquiry. Consequently, any argued factual findings or substantive determinations would, of necessity, have to be dicta. However, to the extent it has been argued the magistrate judge made certain factual findings and substantive determinations outside the limited Rule 12(b)(6) inquiry at hand, this Court DECLINES, at this juncture, to adopt any such findings for the reasons noted.

Consequently, this Court IN PART SUSTAINS and IN PART OVERRULES those objections centering upon the magistrate judge's "findings" as to "dredging." This Court specifically DECLINES to adopt, at this juncture, any portion of the magistrate judge's Ruling which could be argued to have made a factual "finding" or substantive determination as to the <u>actual</u> nature of "dredging," as such a determination is not required by the motion before the Court under the inquiry of 12(b)(6), as clarified by *Iqbal* and *Twombly* and illuminated by *Grubart*, however, ADOPTS the magistrate judge's *results* as to those plaintiffs found to have met the limited standard of 12(b)(6) as clarified by *Iqbal* and *Twombly*, and as to those the magistrate judge found did not.

### 2. Successor Liability

Certain Defendants, also, object to the magistrate judge's use of *Sperry Rand* [16]as authority for the premise that maritime tort claims attach to a successor. Specifically, the objection is:

---

[16]*Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319, 321-322 (5th Cir. 1980).

> Defendants object to the determination that plaintiffs' allegations of dredging as to the predecessors-in-interest of five defendants, namely Texaco Pipelines, LLC, Enterprise Products Company, Union Oil Company of California, El Paso CGP L.L.C., and ExxonMobil Corporation, are sufficient to support the existence of a maritime tort against these companies as successors. (Rec. Doc. 379, pp. 25-26).

[Rec. Doc. 395, p. 1]

However, again, the objection to the magistrate judge's report and recommendation must be viewed through the prism of the limited 12(b)(6) inquiry at hand. Consequently, the question is *not* whether successor liability *actually or more probably exists*, rather, the inquiry is whether plaintiffs' pleadings are sufficient to "nudge" the claims over the line from "conceivable to plausible". Consequently, unless, as a matter of law, in all instances, there can be no successor liability, which is not yet determined in this matter, the question is, again, one of sufficiency of the pleadings judged through the prism of *Iqbal* and *Twombly*. Consequently, the question is not whether such successor liability actually exists or exists to the "probability standard," but, rather, whether sufficient facts have been pled as to successor liability under the *Iqbal* and *Twombly* standards. This Court agrees with the magistrate judge that sufficient facts have been pled to meet the more forgiving 12(b)(6) standard. However, to the extent the parties argue the magistrate judge made determinations beyond those required to address *Iqbal* and *Twombly*, as suggested by argument within the objections, this Court, again, would DECLINE to adopt any such factual and substantive findings, at this juncture. This Court does note, however, the magistrate found "maritime claims attach to the claim against the successor," and, although this Court is of the opinion this legal statement might be correct, it is not a determination which need be made in this particular inquiry, except to the degree required to meet the standards of *Iqbal* and *Twombly*. Therefore, this Court ADOPTS the magistrate judge's recommendation that the group of "successor" entities not be dismissed at this time. Again, this

Court makes no determination - at this juncture and under this procedural vehicle - whether successor liability actually exists - only that sufficient facts have been pled under the applicable standards to withstand a motion couched under 12(b)(6).

### 3. Wikipedia & Meche

Certain Defendants, also, object to the magistrate judge's citation to Wikipedia and this Court's opinion in *Meche*, stating:

> Defendants object to the reliance upon and/or acceptance of information found on Wikipedia and the Court's decision in *Meche v. Richard*, No. 05-0385, 2007 U.S. Dist. LEXIS 17898 (W.D. La. Feb. 26, 2007), to support plaintiffs' conclusory allegation that defendants' tortious activities all took place on navigable waters. (Rec. Doc. 379, pp. 22-23). ...

[Rec. Doc. 395, p.3] Again, defendants objection, it would seem, is directed more to the argued breadth of the magistrate judge's Ruling than its result. As noted, this Court had declined to adopt - at this juncture - any argued "findings" of the magistrate judge not necessary to the very narrow inquiry required by Rule 12(b)(6) as instructed by *Iqbal* and *Twombly* and illuminated by *Grubart*. However, this Court again notes the magistrate judge's specific limitation of his report and recommendation to a 12(b)(6) and not a 12(b)(1) inquiry, thus, arguing against the interpretation suggested by the objections made. Nonetheless, any passing reference to Wikipedia, although, perhaps not ideal, is not of consequence. Again, this Court has declined, at this juncture and under this procedural vehicle and inquiry, to adopt any argued "finding" not required under the analysis at hand - thus, the noted objection is of no relevance, and the magistrate judge's passing reference is of no consequence. Furthermore, the magistrate judge is entitled to rely on his "common sense" and "judicial experience," and the "common and accepted usage" and meanings of terms. Thus, the objection to the use of Wikipedia again pales, even if not separated from the argued substantive

determination and "finding."

Certain objections, also, address the magistrate judge's reference to this Court's opinion in *Meche v. Richard*. Again, although *Meche* is not - nor did the magistrate judge suggest it is - determinative *as to the legal question of the navigability* of any areas at issue in this matter, it is, however, relevant to the Rule 12(b)(6) inquiry at hand as it establishes one cannot argue that, *as a matter of law*, none of the Atchafalaya Basin could be found to be navigable, when looking to the *Iqbal* and *Twombly* standards. Hence, *Meche* is relevant to the *Twombly* and *Iqbal* question of whether the "[f]actual allegations [are] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Just as dredging has been found to be maritime under certain factual scenarios within certain jurisprudence, certain portions of the Atchafalaya Basin have been found to be navigable under certain factual scenario - thus, the finding in *Meche* is relevant **to the *Iqbal* and *Twombly* inquiry** of whether the pleadings can cross the line from "conceivable to plausible," but certainly, *Meche* is not determinative as to the underlying substantive issues not now before the Court. Whether the torts pled actually will be found to be maritime, or the areas pled actually will be found to be navigable, or whether successor liability actually will flow, are not the questions before this Court, rather, this Court looks only to the lesser bar of plausibility set by *Iqbal* and *Twombly*. Thus, the magistrate judge was not in error to note this Court's finding in *Meche* for the limited purpose noted. Defendants argue distinctions between the area of the Atchafalaya Basin at issue in *Meche* versus the areas at issue in the present case are of note, and this Court and, it would seem, the magistrate judge agree. [Rec. Doc. 395, pp. 17-19] However, again, *Meche* was not put forth as determinative of the substantive issue, rather only as informative as to the more limited 12(b)(6) analysis. Under the 12(b)(6) motion before this Court, neither the magistrate judge nor this

Court need make a determination, at this juncture, as to the *actual* navigability *of the particular areas* of the Atchafalaya Basin at issue in this case, thus, the objections are misplaced.

### 4. Objection to the mention of subject matter jurisdiction

Certain Defendants and certain Plaintiffs object to the magistrate judge's passing mention of whether the Court has jurisdiction. As this Court has clarified, and as was noted by the magistrate judge - the question now before this Court is **not** one of jurisdiction, and, neither the magistrate judge, nor this Court, makes any legal finding as to whether jurisdiction *actually* exists - neither party has, at this juncture, challenged jurisdiction, nor does this Court speak to that question within this ruling. Again, as noted in dicta in *Grubart*, where maritime jurisdiction exists, a finding of application of maritime law is apt to follow and *Grubart's* progeny would argue the inverse is also true. However, *Grubart's* breadth and impact is not the specific inquiry now before this Court and this Court declines to set sail upon those perilous waters as under the 12(b)(6) inquiry at hand, this Court need not decide the breadth of *Grubart* and its progeny; the inquiry at hand does *not* encompass making a finding as to the actual substantive existence of either maritime jurisdiction or of a maritime tort. Rather, 12(b)(6) requires only a finding of whether the pleadings could, under the *Twombly* and *Iqbal* standards, be sufficient. Again, neither the magistrate judge's inquiry, nor this Court's review, is geared toward subject matter jurisdiction, nor did he or this Court, make any such jurisdictional determination. The limited focus of the inquiry, although, perhaps, somewhat unique, is one selected by the parties when neither chose to raise the jurisdictional inquiry at this juncture. Thus, the objection is OVERRULED by this Court.

### 5. American Home Assurance Company

American Home Assurance Company ("American Home") an insurer of Shell Pipeline

Company objects, arguing "Judge Hanna inadvertently omitted American Home from the list of insurers contained in the Report that are being dismissed because plaintiffs' have failed to state a tort claim against their insureds under maritime law."[17] [Rec. Doc. 386] Without a more exhaustive review of the involvement of American Home Assurance Company, vis-à-vis all defendants - a cursory review of the record indicates certain insurers might have insured more than one defendant or one defendant at multiple times, - this Court cannot determine whether the magistrate judge's failure to include American Home Assurance Company - as the insurer of Shell Pipeline Company - was inadvertent or intentional. Additionally, this Court's review of the pleadings within the context of American Home Assurance Company's objection revealed multiple insurers beyond American Home Assurance Company were not addressed by the magistrate judge's report and recommendation, however, it would seem, might be impacted by the magistrate judge's report and recommendation - particularly in light of the magistrate judge's order establishing an "opt out" process. [Rec. Doc. 227] Consequently, this Court REMANDS American Home Assurance Company's objections to the magistrate judge, for the magistrate judge to clarify whether American Home Assurance Company - and any other similarly situated insurers - should, by way of the "opt out" order, also, be dismissed in light of the result of the report and recommendation and adoption of portions of that report and recommendation by this Court. Consequently, this Court REMANDS the report and recommendation back to the magistrate judge for further findings as to the objection made by American Home Assurance Company and as to any other similarly situated insurers.

### 6. Other Objections

The Court has reviewed all the remaining objections and their accompanying responses

---

[17] This Court notes that in the Fourth Supplemental and Amending Petition the plaintiffs do list American Home as the insurer of Shell Pipeline Company. [Rec. Doc. 1-7, pp. 22-23]

lodged by both plaintiffs and defendants and finds the remaining objections not to be sufficiently persuasive as to move this Court away from the magistrate judge's report and recommendation and supporting reasons given.  Thus, those remaining objections require no further discussion by this Court.  Rather, this Court finds the remaining objections lack sufficient merit to overrule the magistrate judge on the points raised and as such, all remaining objections are OVERRULED by this Court.

## VI.  Conclusion

Considering the foregoing, this Court modifies the magistrate judge's report and recommendation as noted; ADOPTS the magistrate judge's report and recommendation, as noted; DECLINES to ADOPT those portions of the report and recommendation as noted; and REMANDS the report and recommendation to the magistrate judge for clarification as noted.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___17___ day of January, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE